IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA L. JOHNSON-ESTER as guardian and on behalf of MONTELL JOHNSON, a/k/a MARCELLUS BATES, <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, Governor of the State of California, MATTHEW CATE, Secretary of the California Department of Corrections and Rehabilitation, ROBIN DEZEMBER, Chief Deputy Secretary of Health Care Services for the California Department of Corrections and Rehabilitation, and UNKNOWN DEFENDANTS A, B, and C, <br><br> Defendants. | CASE NO.: 09-CV-5384 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Gloria L. Johnson-Ester and Montell Johnson seek to enjoin the return of Johnson, an inmate in the Illinois prison system, to the California Department of Corrections and Rehabilitation ("CDCR"). Defendants Arnold Schwarzenegger, Governor of the State of California, and Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation,[1] have moved to dismiss or, in the alternative, transfer [18] this § 1983 action to the district where Defendants reside, specifically, the Eastern District of California. For the reasons set forth below, the Court grants Defendants' motion to transfer venue [18] and declines to address Defendants' alternative motion to dismiss.

---

[1] The motion to dismiss or to change venue is brought only by Defendants Schwarzenegger and Cate. Defendant Robin Dezember, Chief Services for the California Department of Corrections and Rehabilitation, has not yet been served with the complaint.

**I.	Background**

    **A.	Executive Agreement between Illinois and California**

In 1998, Montell Johnson was convicted of voluntary manslaughter in California and sentenced to life without parole. In December 1998, former-Governor Jim Edgar of Illinois and former-Governor Pete Wilson of California signed an Executive Agreement for the extradition of Johnson to the State of Illinois for prosecution of four counts of murder. The Executive Agreement specifically stated that Johnson would be "made available" to the State of California for placement within the CDCR upon the commutation of his Illinois death sentence. In 1999, Johnson was convicted of murder in Illinois and sentenced to death. This death sentence was commuted to forty years in 2003. While serving his Illinois sentence, Johnson was diagnosed with multiple sclerosis ("MS"). By April 2006, he had been diagnosed as a paraplegic with advanced secondary progressive MS, and former Illinois Governor Rod Blagojevich granted Johnson's petition for medical clemency in 2008. Mr. Johnson currently remains in the custody of Illinois prison officials, but California prison officials seek transfer of Mr. Johnson to their custody under the Executive Agreement.

    **B.	2007 Lawsuit between Plaintiffs and Illinois Prison Officials**

In July 2007, Plaintiffs in this action filed a separate lawsuit pursuant to 42 U.S.C. §1983, alleging that Johnson's Eighth Amendment rights were violated when the correctional facility where he was housed failed to render adequate medical care and further alleging that Plaintiff Gloria Johnson-Ester's First Amendment rights were violated when the warden at the same facility prevented Ms. Johnson-Ester from visiting and communicating with her son. The issues raised in that lawsuit are now pending before this Court on Defendants' motions for summary judgment. Since both cases involve claims relating to the medical care of the same individual,

Montell Johnson, this 2009 case was reassigned from District Judge Charles Kocoras to this Court on October 14, 2009.

This Court is familiar with the contentions of Plaintiffs in both actions concerning the proposed transfer of Mr. Johnson from Illinois to California prison officials. Johnson clearly has serious, well-documented health issues. In fact, on the suggestion and with the agreement of the parties, in the earlier filed case, the Court has appointed a medical expert (see Fed. R. Evid. 706) to examine Mr. Johnson and provide input into his fitness for such a transfer. In early March 2010, the court-appointed medical expert, Dr. Demetrios Skias, examined Johnson to determine his fitness for a transfer to California. In a report provided to the Court on March 3 (and supplemented early in the following week), Dr. Skias opined as follows:

> In summary, Mr. Johnson is in an advanced stage of multiple sclerosis with many severe and fixed neurological deficits. At this stage, sudden change of the neurologic status from this disease is very unlikely to occur. Therefore, from the neurological point of view, and in my opinion, the patient can, with reasonable degree of safety, be transported to outside this State provided the appropriate ambulance transport and support is provided * * * * Additionally, the patient has to be cleared medically for travel by his current primary care physicians, or other internists, just prior to departure to ensure that there are no last minute medical complications, including infections, pulmonary and cardiovascular problems, or from any other body system, that could adversely, albeit temporarily, impact the neurologic status and possibly reduce the margin of safety during travel.

Having advised the parties that Dr. Skias has rendered his opinion, the Court now turns to the question of whether this district is a proper venue for Plaintiffs' lawsuit against the California state officials.

## II. Analysis

### A. Venue

Federal Rule of Civil Procedure 12(b)(3) allows for a motion to dismiss due to improper venue. See *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 & n.2 (7th Cir. 2003). The

district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought," any case filed in the wrong venue. 28 U.S.C. § 1406(a). Venue statutes serve the purpose of "protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1576 (Fed. Cir. 1990). Plaintiff bears the burden of establishing that venue is proper. *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969). In ruling on a motion to dismiss for lack of venue, the court should take all allegations in the complaint as true (unless contradicted by affidavit), draw all reasonable inferences in favor of plaintiff, and may examine facts outside the complaint. See *ISA Chicago Wholesale, Inc. v. Swisher Intern., Inc.*, 2009 WL 3152785, at *3 (N.D. Ill. Sept. 25, 2009) (citations omitted).

Defendants contend that venue is not proper in the Northern District of Illinois, and that this case should be transferred to the Eastern District of California. In a federal question case, such as a controversy under § 1983, venue is governed by 28 U.S.C. § 1391(b), which provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b)(1)-(3). Under the first statutory basis for venue, the residence of these Defendants is where they perform their duties. *Berry v. N.Y. Sate Dep't of Corr. Servs.*, 808 F. Supp. 1106 (S.D.N.Y. 1992) ("It is settled law that under § 1391 the 'residence' of public officers such as these defendants means his or her 'official' and not 'actual' residence").

4

Defendant Schwarzenegger performs his official duties at the state capitol building in Sacramento, California, and Defendant Cate performs his official duties in the CDCR Headquarters building, also located in Sacramento. Pursuant to § 1391(b)(1), venue would be proper in the Eastern District of California because all Defendants are residents of that district.

Plaintiffs do not quibble with whether venue is proper in the Eastern District of California. Instead, Plaintiffs insist that venue also is proper in the Northern District of Illinois under § 1391(b)(2).[2] Section 1391(b)(2) provides that venue is proper in a district where a substantial part of the events or omissions giving rise to the claim occurred. The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a *substantial* portion of the activities *giving rise to the claim* occurred in the particular district. See *Pfeiffer v. Insty Prints*, 1993 WL 443403, at *2 (N.D. Ill. Oct. 29, 1993). Generally, courts in this circuit, as well as sister circuits, focus on the activities of the defendant, not the plaintiff, in making venue decisions under § 1391(b)(2). See *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (stating that courts should "focus on relevant activities of the defendant, not of the plaintiff," in making venue decisions); *Moran Industries, Inc. v. Higdon*, 2008 WL 4874114, at *5 (N.D. Ill. June 26, 2008) (citing *Woodke*) (same); *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1016 (E.D. Wis. 2000) ("In determining where substantial parts of the underlying events occurred I focus on the activities of the defendant and not those of the plaintiff."). While that concern is not explicitly stated in (b)(2), it comports with the general theory that "[v]enue under 28 U.S.C. § 1391 usually respects defendants' interests." *Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1036 (7th Cir. 2000). The test for venue under § 1391 looks not to the defendant's contacts with the forum, but rather to the

---

[2] Since neither Schwarzenegger nor Cate reside in Illinois, § 1391(a)(1) does not provide for venue in Illinois.

location of the events giving rise to the cause of action. See *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d. Cir. 1994). Even focusing on the relevant activities of the defendant, fairness still is insured by the requirement that the events in the district be "substantial."

Invoking § 1391(b)(2), Plaintiffs' complaint states that venue is proper in this district because "Mr. Johnson is incarcerated in this District and some or all of Defendants' actions relating to the rendition of Mr. Johnson have occurred within this District." Plaintiffs point out that Johnson, who is the subject of the Executive Agreement that Defendants seek to enforce, currently is located in this District. Plaintiffs theorize that while Defendants may have decided, from their offices in Sacramento, that Johnson should be returned to California, Defendants' efforts and activities directed toward that end have occurred in Illinois, in the form of communications directed to Illinois officials designed to facilitate the return of Johnson. Specifically, Plaintiffs contend that Johnson's attorneys "have been told that it is California's 'official position' that Mr. Johnson be returned to California to serve his sentence there," and that "[t]he CDCR and Governor Schwarzenegger's office have communicated the same to the Illinois Department of Corrections." Plaintiffs also allege that "[o]n August 5, counsel for the CDCR communicated to James Doran of the Illinois Attorney General's Office that (1) the CDCR 'is expecting' Mr. Johnson's rendition pursuant to the Executive Agreement, and (2) Defendant Dezember and/or unknown Defendants A, B or C refuse to provide a treatment plan for Mr. Johnson's care." Plaintiffs concede that under ordinary circumstances – for instance, if Johnson were in good health and if Plaintiffs did not have concerns about the provision of adequate health care in the California prison system – they would not be complaining about the

California officials' decision to enforce the Executive Agreement. However, because these two factors arguably are present, Plaintiffs have challenged the extradition decisions of Defendants.[3]

While Plaintiffs appear to acknowledge that at least some of the events giving rise to this lawsuit occurred in California, Plaintiffs contend that communications between California and Illinois officials are sufficient to establish venue under § 1391(b)(2). See, *e.g.*, *Chemical Waste Management, Inc. v. Sims*, 870 F. Supp. 870, 875 (N.D. Ill. 1994) (stating that the test is "not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district."). However, the first paragraph of Plaintiffs' complaint, as well as Plaintiffs' clear purpose in bringing this lawsuit, undermines their assertion:

> This action for injunctive relief arises out of the efforts of the Defendants to enforce a 1998 Executive Agreement * * * between the Governors of the States of Illinois and California for what the Executive Agreement calls the "rendition of Marcellus Bates, a/k/a Montell Johnson," to California. Mr. Johnson suffers from advanced multiple sclerosis and is completely bedridden and dependant on others for care. Defendants seek to place Mr. Johnson in the custody of the California Department of Corrections and Rehabilitation ("CDCR") without performing any review of this medical condition, making any provision for his medical care, or showing that, in spite of California's unconstitutional inability to provide medical care to its prisoners, California has the means, the funds, the desire, the ability and the intention of actually caring for Mr. Johnson.

Pls. Compl. 1. Based on Plaintiffs' own allegations, the substantial events and issues giving rise to this lawsuit are not Defendants' communications about California's intention to seek the return of Johnson. While those communications may be contacts (minimal, at best) that the California Defendants have had with the State of Illinois, they are not "substantial" events pertaining to this lawsuit. See *Cottman Transmission*, 36 F.3d at 294. The substantial

---

[3] Plaintiffs do not seek relief in this lawsuit for the commutation and clemency decisions that occurred in Illinois, which rendered Johnson available to the state of California under the Executive Agreement. Nor do they contest in this lawsuit the decision between the two states' governors to enter into the Executive Agreement.

7

allegations in this lawsuit surround the capacity of a California prison to care for a person in Johnson's state of chronically poor health.

Stated another way, the communications between the California Defendants and the State of Illinois are not independently significant, but rather are incidental to the cause of action. In communicating with Illinois, Defendants were merely reporting ongoing decisions and activities of the California political and prison authorities, presumably as a courtesy to the Illinois officials who view themselves as contractually bound to honor the Executive Agreement. Compare *Pfeiffer*, 1993 WL 443403, at *3 (finding that facts alleged in complaint and documents submitted by plaintiff only supported that the phone calls and correspondence relied upon informed plaintiff about ongoing contractual activities in Milwaukee, and did not constitute the performance of those contractual obligations), with *Master Tech Products, Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002) (finding that making telephone calls and sending agreements were more than "part of the historical predicate" for the RICO claim; rather, they were the "essence of the claim and form[ed] a substantial part of the events giving rise to it"). In this case, as in both *Pfeiffer* and *Master Tech*, phone calls and written correspondence have been exchanged between the California Defendants and either Illinois officials or Plaintiffs' representatives. However, as in *Pfeiffer*, the communications of which Plaintiffs provide evidence do not pertain directly to the conduct underlying this lawsuit; rather, the communications merely inform Plaintiffs of ongoing events, *after* the California Defendants made the decision that serves as the basis for this lawsuit and *incidental* to the condition of the California prison system.

Parenthetically, it should be noted that as this case proceeds on the merits, the discovery will not be about these incidental communications between Illinois and California officials.

Rather, discovery will focus on the state of the California prison system, and, more specifically, the availability of sufficient health care in the prisons. While Johnson's health clearly is relevant to the issues in this case (but for his health problems, Plaintiffs concede that they would not challenge his return to California), it is not the basis of this lawsuit. Moreover, Johnson's health problems have been well-documented – including in Dr. Skias' recent report – and those records easily can be brought to the attention of the court in the Eastern District of California.

Conversely, evidence relating to the fitness of the California prison system and its capacity to care for an inmate with advanced MS is found entirely within the state of California. In fact, currently pending in the California federal courts is a class action concerning the provision of medical care for CDCR inmates. See *Plata v. Schwarzenegger*, No. C-01-1351 THE (N.D. Cal. April 5, 2001) (class action, now in the remedial phases of litigation, that encompasses "all prisoners in the custody of the CDC[R] with serious medical needs"). Defendants themselves certainly are key witnesses in this case, and they, as well as the prison officials and doctors who would be responsible for Johnson's care, all reside in California. In addition, the documents pertaining to these individuals and to the resources available to the California prison system also would be in California, and some of the pertinent materials in fact may already have been produced in the *Plata* litigation.

In sum, Plaintiffs' complaint arises from the current state of the prison health care system in California and from decisions made in California by California state officials, such as seeking Johnson's return to California to serve his California sentence for voluntary manslaughter and refusing to provide a health care plan for Johnson prior to receiving him. For these reasons, the substantial portion of the activities *giving rise to* Plaintiffs' claims occurred in the Eastern District of California, and the communications identified by Plaintiffs between the California

Defendants and the State of Illinois are merely incidental to Plaintiffs' cause of action and cannot serve as the basis for venue in this district. See *Pfeiffer*, 1993 WL 443403, at *3 (acts intended to inform plaintiffs about contractual activities, in contrast to acts constituting performance of the contract, do not ground venue); *Jordache Enterprises, Inc. v. Brobeck, Phleger, & Harrison*, 1994 WL 74860, at *4-5 (S.D.N.Y. Mar. 7, 1994) (same). Accordingly, the Court, in the interests of justice and in lieu of dismissing this case without prejudice, will transfer this case to the Eastern District of California. Because the Court concludes that transfer is appropriate on § 1406(a) grounds,[4] the Court declines to address – and expresses no view on – Defendants' arguments regarding dismissal.

## III. Conclusion

For the reasons stated above, the Court grants Defendants' motion to transfer [18] this case to the Eastern District of California.

Dated: March 25, 2010

_____
Robert M. Dow, Jr.
United States District Judge

---

[4] Because the Court determines that transfer to the Eastern District of California is appropriate under § 1406(a), the Court need not address any alternative arguments for transfer under 28 U.S.C. § 1404(a). If the Court had found that venue is proper in this district under a § 1406 analysis, it would have addressed the question of whether the Eastern District of California nevertheless constitutes a superior forum for litigating this case under a § 1404 analysis. However, before undertaking a § 1404(a) analysis, the Court would have requested additional briefing from the parties, as the parties provided only general details about many of the § 1404 considerations.